COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Callins and Frucci
Argued at Salem, Virginia

**UNPUBLISHED**

CHAD A. THURSTON

v.        Record No. 0424-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE DOMINIQUE A. CALLINS
FEBRUARY 18, 2025

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Shannon T. Sherrill, Judge

Dana R. Cormier (Dana R. Cormier, P.L.C., on brief), for appellant.

Susan Foster Barr, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Theophani Stamos, Deputy Attorney
General, on brief), for appellee.

The Circuit Court of Augusta County held an annual review hearing for Chad A. Thurston, a

sexually violent predator ("SVP") civilly committed for secure inpatient treatment pursuant to Code

§§ 37.2-900 to -912.  The circuit court determined that Thurston remained an SVP and recommitted

him to the custody of the Department of Behavioral Health and Developmental Services (the

"Department").  On appeal, Thurston challenges the sufficiency of the evidence, arguing that the

record "[did] not establish that his diagnosed personality disorder" made "him likely to engage in

sexually violent acts."  We disagree and affirm the circuit court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

In 2013, the circuit court found Thurston to be an SVP and committed him to the custody of the Department for secure inpatient treatment pursuant to Code §§ 37.2-900 to -912. The Department then committed Thurston to the Virginia Center for Behavioral Rehabilitation (the "VCBR"), the secure facility designated by the Department's Commissioner.

Four years later, in August 2017, the circuit court ordered the Department to conditionally release Thurston to the community; accordingly, the Department released Thurston in September 2017. After eight months in the community, Thurston violated the conditions of his release; as a result, the circuit court revoked his conditional release and recommitted him to the Department on October 10, 2018. Thurston waived his annual review hearings scheduled for December 6, 2021, and for December 6, 2022,[2] and the circuit court entered recommitment orders reflecting that Thurston remained an SVP.

In December 2023, the circuit court held Thurston's annual review hearing to determine whether he remained an SVP, and, if so, to assess his need for continued secure inpatient treatment. In preparation for the hearing, clinical psychologists Dr. Julio Ramirez and Dr. Craig King[3] created reports evaluating Thurston's condition and need for secured inpatient treatment

---

[1] "Because the Commonwealth prevailed at the [SVP] hearing, this Court must view the evidence in the light most favorable to the Commonwealth." *Lotz v. Commonwealth*, 277 Va. 345, 349 (2009) (citing *Shivaee v. Commonwealth*, 270 Va. 112, 127 (2005)).
Additionally, the record in this case is sealed. "To the extent that we mention facts found only in the sealed record, we unseal those specific facts, finding them relevant to our decision." *Daily Press, LLC v. Commonwealth*, 301 Va. 384, 393 n.1 (2022).

[2] The record does not indicate whether Thurston had an annual review scheduled for the years 2018, 2019 or 2020.

[3] The circuit court appointed Dr. King, on Thurston's motion, to conduct a second opinion evaluation pursuant to Code § 37.2-910(B).

pursuant to Code § 37.2-910(B). Both psychologists concluded that Thurston remained an SVP and that he was not a suitable candidate for conditional release.

Dr. Ramirez reported that "Thurston's mental condition – specifically, his personality disorder – has not yet so significantly and permanently changed as to render him no longer [an] SVP." Dr. Ramirez determined that Thurston "has a personality disorder with antisocial features" and that Thurston's disorder has manifested "in deficits in interpersonal functioning, impulse control and emotional self-regulation." Dr. Ramirez explained that Thurston's history of antisocial and criminal behavior "dat[es] back to his adolescence" and that he lacks remorse and tends to be egocentric. Although Dr. Ramirez noted that Thurston successfully advanced to "Phase II"[4] of treatment, his overall attendance rate and participation scores declined during the most recent quarter. After outlining the requirements of conditional release in Code § 37.2-912, Dr. Ramirez opined that Thurston remained an SVP and continued to require inpatient treatment at the VCBR.

Dr. King came to the same conclusion. After analyzing Thurston's history, Dr. King wrote in his report:

> [Thurston's] predisposing condition, other specified personality disorder (antisocial)[,] remains active[;] it is my opinion, he remains an SVP. Therefore, it is my opinion, to a reasonable degree of psychological certainty, that Mr. Thurston "remains" an SVP pursuant to § 37.2-910.

In his rationale for recommending that Thurston not be conditionally released, Dr. King included a portion of an evaluation he conducted in 2021:

> While I opined in 2017 that sexual recidivism risk was not a primary concern when examining Mr. Thurston's history, his difficulty controlling his antisociality and use of substances (most recently on conditional release) have demonstrated his inability to

---

[4] According to Dr. Ramirez's report, treatment at the VCBR is provided in three phases and "[r]esidents are expected to complete tasks and to consistently demonstrate behaviors specific to the phase of treatment in which they are working."

achieve stability and remain in the community. Mr. Thurston needs to show that he can be stable for a period of time at VCBR before he will be ready for conditional release.

Dr. King concluded that "[u]nfortunately, [Thurston] has been largely emotionally and behaviorally unstable over the past two years" and that he "continues to need secure inpatient treatment to prevent his conditions from deteriorating."

Thurston chose not to introduce any evidence at the annual hearing. After taking the matter under advisement, the circuit court, in a letter opinion, found that the Commonwealth proved by clear and convincing evidence that Thurston remained an SVP and required continued inpatient treatment. Accordingly, the circuit court recommitted Thurston to the custody of the Department for inpatient treatment at the VCBR. Thurston appeals.

ANALYSIS

Thurston argues that the Commonwealth failed to prove by clear and convincing evidence that he remains an SVP because the "record 'as a whole' does not establish that his diagnosed personality disorder continues to make him likely to engage in sexually violent acts." Thurston's argument is without merit.

Whether a respondent is or remains an SVP is a factual determination to be made by a court or jury. Code § 37.2-908(C). We do not reverse such a factual determination unless it is "plainly wrong or without evidence to support [it]." *DeMille v. Commonwealth*, 283 Va. 316, 323 (2012) (alteration in original) (quoting *Commonwealth v. Squire*, 278 Va. 746, 751 (2009)). A "sexually violent predator" is defined as

> any person who (i) has been convicted of a sexually violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2-169.3; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts.

Code § 37.2-900.  Although "the opinion of experts is not dispositive," *Squire*, 278 Va. at 751,

"[t]hese matters are almost entirely to be determined by the court through consideration of expert

opinion," *Shellman v. Commonwealth*, 284 Va. 711, 722 (2012).

In opining that a respondent is an SVP, "it is not necessary for an expert to state with

specificity that the respondent will likely engage in sexually violent acts in the future." *DeMille*,

283 Va. at 324-25.  Rather, "the determination of whether the respondent is likely to engage in

sexually violent acts as defined in Code § 37.2-900 by clear and convincing evidence is an issue of

fact to be determined by the court or jury upon consideration of the whole record." *Id.* at 325.

Once determined to be an SVP and committed for secure inpatient treatment, "[t]he

committing court shall conduct a hearing 12 months after the date of commitment to assess each

respondent's need for secure inpatient treatment."  Code § 37.2-910(A).  At the annual review

hearing, the Commonwealth must prove "by clear and convincing evidence[5] that the respondent

*remains* a sexually violent predator."  Code § 37.2-910(C) (emphasis added).  Although the

distinction between whether an individual is or remains an SVP is minuscule, the purpose of an

SVP annual review hearing differs substantially from that of an initial SVP determination.

> Unlike the initial trial in which a respondent is determined to be a
> sexually violent predator, the purpose of the annual assessment

---

[5] The United States Supreme Court and our Supreme Court have discussed why the clear and convincing standard is the "minimum standard" used in a civil commitment proceeding:

> An "individual's interest in the outcome of a civil commitment
> proceeding is of such weight and gravity that due process requires
> the state to justify confinement by proof more substantial than a
> mere preponderance of the evidence."  The "beyond a reasonable
> doubt" standard "is inappropriate in civil commitment proceedings
> because, given the uncertainties of psychiatric diagnosis, it may
> impose a burden the state cannot meet and thereby erect an
> unreasonable barrier to needed medical treatment."  Thus, the
> "clear and convincing" standard "strikes a fair balance between the
> rights of the individual and the legitimate concerns of the state."

*Shivaee*, 270 Va. at 126 (quoting *Addington v. Texas*, 441 U.S. 418, 427-33 (1979)).

> hearing is to determine whether, *in light of the treatment received in the preceding year*, the respondent *remains* a sexually violent predator and, if so, whether there is a less restrictive alternative to continued secure inpatient treatment.

*Shellman*, 284 Va. at 722 (emphases added).

Here, the question squarely before this Court concerns whether the circuit court was plainly wrong or without evidence to support its finding that Thurston remained an SVP.

At the annual review hearing, the circuit court received the expert reports of psychologists Ramirez and King—both of whom concluded that Thurston remained an SVP. Upon reviewing Thurston's disorders, treatment, behavior, and progress within the treatment program, Dr. Ramirez and Dr. King each recommended that Thurston continue to receive secure inpatient treatment as an SVP. Dr. Ramirez opined that Thurston's disorder "has not yet so significantly and permanently changed as to render him no longer [an] SVP." Dr. King likewise opined that Thurston's disorder "remains active" and that "it is [his] opinion, to a reasonable degree of psychological certainty, that Mr. Thurston 'remains' an SVP pursuant to § 37.2-910." The doctors' opinions clearly indicate that Thurston remained an SVP in need of inpatient care. Neither Dr. Ramirez nor Dr. King had to "state with specificity that the respondent will likely engage in sexually violent acts in the future" for the circuit court to find their respective testimony credible or reliable. *DeMille*, 283 Va. at 324-25.

Further, the very definition of "sexually violent predator" encapsulates the conclusion that a respondent is "likely to engage in sexually violent acts." Code § 37.2-900. Thus, Dr. Ramirez and Dr. King were not required to state so explicitly. Rather, the circuit court could rely on their expert opinions that Thurston remains an SVP and continues to need secure inpatient treatment to properly find that Thurston is a person who has been convicted of a sexually violent offense and who, because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, *thereby* making him likely to engage in sexually violent acts. *See Boyce v.*

*Commonwealth*, 279 Va. 644, 647 (2010) (defining "sexually violent predator" as "any person who (1) has been convicted of a sexually violent offense, and (2) because of a mental abnormality or personality disorder, finds it difficult to control his or her predatory behavior, which makes him or her likely to engage in sexually violent acts" (citing Code § 37.2-900)).

Further, we disagree with Thurston's contention that the circuit court did not consider "the record as a whole"[6] in finding that he remains an SVP.  Other than his bare assertion, Thurston does not point to a specific factual error or omission on the part of the circuit court to support his contention that the circuit court did not consider the entire—or "whole"—record before it.  Instead, Thurston appears to take issue with the manner of the court's weighing of the evidence.  Specifically, Thurston challenges the circuit court's consideration of the experts' reports over his "excellent attendance and participation scores for his treatment classes and groups."  Thurston contends that the circuit court gave no consideration to the fact that he, now in the second phase of his three-phase treatment, "consistently met all Phase I task objectives" and several of his Phase II task objectives.

Such contention is contradicted by the record, including the circuit court's specific recognition of Thurston's "strides in meeting the goals and objectives of treatment."  Nonetheless, the circuit court found the evidence "overwhelmingly" showed that Thurston had not made "a significant and lasting change in his qualifying personality disorder" sufficient to establish "that he no longer remains a sexually violent predator."  The reports of Dr. Ramirez and Dr. King considered a summary of Thurston's personal history, his "first period of treatment," his treatment and progress at the VCBR, and an annual review from 2021—which included findings from Thurston's 2017 review.  Thus, in this manner, the circuit court considered the whole record in light

---

[6] We resist Thurston's urging to define the phrase "record as a whole."  Rather, we hold that, here, the reports of Dr. Ramirez and Dr. King sufficiently considered Thurston's condition, past history, treatment, and progress to include the entire, or "whole," record.

of the treatment received in the preceding years since Thurston's last annual review.  *See Shellman*, 284 Va. at 722.  We do not find that the circuit court was plainly wrong or without evidence to support its finding that Thurston remains an SVP and continues to require secure inpatient treatment.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*